| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>---------------------------------------------------------------X<br><br>UNITED STATES OF AMERICA | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #: _____<br>DATE FILED:  July 3, 2020 |

                                                          16-CR-311 (KMW)
                                                     **OPINION AND ORDER**

       v.

JOSE ROMÁN

              Defendant.
---------------------------------------------------------------X

KIMBA M. WOOD, District Judge:

      Defendant Jose Román has moved to reduce his sentence under the federal compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), in light of COVID-19.  (ECF No. 423.)  The Government opposes the motion.  (ECF No. 428.)  For the reasons that follow, Defendant's motion is DENIED.

## BACKGROUND

      Defendant was arrested on October 5, 2016, in connection with the take-down of a group known as "YNR."  According to the Government, YNR was a "violent street crew" responsible for narcotics sales near 188th Street and Webster Avenue in the Bronx.  (Gov't Opp'n at 1.)

      The Government charged Defendant with participating in a narcotics conspiracy involving the distribution, and possession with intent to distribute, one kilogram or more of heroin and 280 grams or more of crack cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A).  Defendant pleaded guilty to the lesser included offense of participating in a narcotics conspiracy involving the distribution, and possession with intent to distribute, 100

1

grams or more of heroin and 28 grams or more of crack cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B).

On April 25, 2018, the Court sentenced Defendant to 97 months' imprisonment, to be followed by four years of supervised release. The Court took into consideration the fact that Defendant had supplied a large quantity of heroin to YNR over the course of several years and had provided a co-defendant with a gun obtained from a relative. (Sentencing Tr. at 22, ECF No. 355.) The Court also recognized that Defendant had been addicted to drugs for some time and his history did not "suggest[] a serious criminal." (*Id*.)

Defendant is currently serving his sentence at FCI Danbury, and his projected release date is August 25, 2023.

Defendant submitted an administrative request for compassionate release or home confinement on May 2, 2020. (Gov. Opp'n at 2.) Bureau of Prisons ("BOP") officials informed him he was ineligible for home confinement due to the nature of his crime, and returned his compassionate release request to him a few days later because he had not articulated a basis for it. (*Id.*) Defendant re-submitted the compassionate release request on May 10, 2020, and the BOP denied it on May 12, 2020. (*Id.*)

On May 22, 2020, Defendant filed the present motion. The Government filed its memorandum in opposition to the motion on May 29, 2020 and, pursuant to the Court's Order (ECF No. 429), provided additional details about the conditions at FCI Danbury on June 4, 2020. (ECF Nos. 428, 432.) Defendant submitted a *pro se* reply on June 17, 2020. (ECF No. 434.) The Court granted Defendant's request to reappoint his trial counsel under the Criminal Justice Act ("CJA") for the purposes of assisting him with his compassionate release motion. CJA

counsel then filed two supplemental submissions, on June 30, 2020 and July 2, 2020, respectively.  (ECF No. 439, 443.)

## LEGAL STANDARDS

Under 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), a court may reduce a defendant's sentence upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant.  A defendant may move under § 3582(c)(1)(A) only after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."[1]  *Id.*

A court may reduce a defendant's sentence if the court finds that "extraordinary and compelling reasons warrant such a reduction," and "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission."  *Id.* § 3582(c)(1)(A)(i).  In making this determination, the court must consider the "the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable."  *Id.* § 3582(c)(1)(A).

Congress delegated responsibility to the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction."  28 U.S.C. § 994(t)).  The Sentencing Commission has determined that a defendant's circumstances meet this standard when, *inter alia*, the defendant is "suffering from a terminal illness" or a "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility," or if, in the judgment of the BOP, the defendant's circumstances are extraordinary and compelling for "other reasons."

---

[1] Defendant's motion is properly before the Court because 30 days have elapsed since the date of Defendant's request to the Warden of FCI Danbury.  (*See* Gov. Opp'n at 8.)

U.S.S.G. § 1B1.13(1)(A) & cmt. n.1(A), (D).  Following the passage of the First Step Act, courts may independently determine whether such "other reasons" are present in a given case, without deference to the BOP's judgment.  *See United States v. Lisi*, No. 15-CR-457, 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) (Failla, J.).

In addition, the Sentencing Commission has resolved that a court should reduce a defendant's sentence only after determining that "[t]he defendant is not a danger to the safety of any other person or to the community."  U.S.S.G. § 1B1.13(2).

## DISCUSSION

COVID-19 presents increased risks in prison settings, where it is difficult to practice consistent social distancing, to maintain strict hygiene, and to take other preventative cautions.  The conditions at FCI Danbury are evidence of this dangerous reality.  As of June 3, 2020, FCI Danbury had tested all inmates and, with some results still pending, found that 106 were infected with COVID-19, while 805 tested negative.  (Gov. Supp. Opp'n at 2, ECF No. 432.)  A startling 61 of 75 staff members who received tests—or 81%—were infected.  (*Id.*)  Currently, 96 inmates are infected—a number only slightly reduced from last month's count.[2]

Defendant argues that his obesity makes him particularly vulnerable to the virus.  Defendant states that he has a body mass index ("BMI") greater than 40; the Government states that it is below 40.  (*Compare* Gov. Supp. Opp'n at 1 with Def. Reply at 4.)  Neither party has presented evidence of Defendant's BMI.  Since the time of the parties' writing, the Centers for Disease Control and Prevention ("CDC") have updating their guidance, lowering the relevant

---

[2] *See COVID-19 Cases*, Fed. Bureau Prisons, https://www.bop.gov/coronavirus/ (accessed July 2, 2020)

4

BMI threshold from 40 to 30; now, those with a BMI of 30 or above are believed to face increased risk of severe illness due to COVID-19. [3]

For present purposes, the Court assumes that Defendant's obesity, in the context of the COVID-19 pandemic and the conditions at FCI Danbury, constitutes an extraordinary and compelling reason for granting compassionate release.

Nevertheless, the Court finds that releasing Defendant would be contrary to the Sentencing Commission's directive that courts deny compassionate release to those who would pose a danger to the community.  As the Court recognized at sentencing, Defendant's offense was "very serious, given that Mr. Roman supplied a large quantity of heroin to the gang known as YNR over a number of years. He also obtained a gun and gave it to Rudge, a very violent member of the YNR."  (Sent. Tr. at 22.)

Some of the factors under 18 U.S.C. § 3553 weigh in Defendant's favor.  For instance, reducing Defendant's sentence might better "provide the defendant with needed . . . medical care" were he to contract COVID-19, and Defendant's "history and characteristics" include a difficult childhood and a struggle with addiction.  *See* 18 U.S.C. § 3553(a)(1), (2)(D). Defendant's spotless prison disciplinary record is a great credit to him.  But Section 3553 also requires the Court to consider "the need for the sentence imposed to reflect the seriousness of the offense," "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant."  *Id.* § 3553(2)(B)–(D).  Here, the factors that favor Defendant are outweighed by the gravity of Defendant's conduct, as well as the likelihood that he would return to criminal activity were he to be released early.

---

[3] *See People of Any Age with Underlying Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (accessed July 2, 2020).

5

## CONCLUSION

For the foregoing reasons, Defendant's motion for compassionate release under § 3582(c)(1)(A) is DENIED.

SO ORDERED.

Dated: New York, New York
July 3, 2020

          /s/ Kimba M. Wood
          KIMBA M. WOOD
          United States District Judge